UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------ x
:
THE CARLTON GROUP, LTD.,                : Case No.: 1:17-cv-8981
:
                             Plaintiff,    : **VERIFIED COMPLAINT**
:
          -against-               :
:
MIZRAHI DEVELOPMENT GROUP (THE ONE) INC., :
:
                         Defendant.    :
:
------------------------------------------------------------------ x

      Plaintiff The Carlton Group, Ltd. ("**Plaintiff**" or "**Carlton**"), by its counsel, Meister Seelig & Fein LLP, as its Verified Complaint against defendant Mizrahi Development Group (The One) Inc. ("**MDG**" or "**Defendant**"), alleges, as to its own knowledge as to facts within its knowledge and on information and belief as to the remaining allegations, as follows:

### Introduction

      1.    This is an action to recover a CAD $8,520,000 commission (the "**Commission**"), which Defendant has wrongfully refused to pay Carlton as required by the parties' Exclusive Debt and Equity Advisory Agreement dated January 19, 2016 (the "**Exclusive Agreement**," a copy of which is annexed hereto as **Exhibit A**).

      2.    At all relevant times, Carlton complied with its obligations under the parties' Exclusive Agreement.

      3.    Pursuant to Section 2(B) of the Exclusive Agreement, Defendant had an obligation to "immediately refer to Carlton all inquiries and offerings received by [Defendant] with respect to a possible debt and/or equity financing of the Property by any and all Lenders, EJV Parties, or

their affiliates, correspondents or other representatives, regardless of the source of such inquiries or offerings."

4. Defendant breached the Exclusive Agreement by failing and refusing to inform Carlton during the Term (defined below) that CERIECO Canada Corp. ("**CERIECO**"), a Chinese investor, showed an express interest in investing debt and/or equity capital in the Property (defined below). Defendant further breached the Exclusive Agreement by purporting to terminate it during Carlton's exclusive Term, even though the Exclusive Agreement contained no right of termination, and did so pretextually only after Defendant learned of CERIECO's intent to invest in the Property because Defendant wanted to avoid paying Carlton its Commission pursuant to the Exclusive Agreement.

5. Section 3(D) of the Exclusive Agreement clearly provides a "3 Year Tail Period" for any investor who expressed interest during the Term and issues a Commitment within 3 years after the expiration of the Term. Because the Exclusive Agreement required Defendant to disclose CERIECO's expressed interest during the Term and Defendant breached that obligation, Defendant frustrated Carlton's ability to negotiate and finalize a Commitment with CERIECO, an "interested party" both during the Term and during the 3 Year Tail Period.

6. Section 2(B) of the Agreement states that Section 2(B) also states that: "[a]ll negotiations [for inquiries and offerings for debt and/or equity financing] shall be conducted solely by Carlton or under Carlton's direction."

7. Ultimately, Defendant breached the Exclusive Agreement by failing to pay Carlton its duly earned Commission, when, on August 24, 2017, well within the 3 Year Tail Period, CERIECO and Defendant closed on a CAD $213,000,000 CERIECO Equity Investment (defined below) in the Property.

8. Because the CERIECO Equity Investment closed on August 24, 2017 Carlton is entitled to be paid its Commission.

9. As a result, Carlton seeks judgment against Defendant for the CAD $8,520,000 Commission due from Defendant, together with statutory interest and prevailing party attorneys' fees and costs in accordance with Section 8 of the Exclusive Agreement.

## Parties, Jurisdiction and Venue

10. Carlton is a New York corporation with offices located at 560 Lexington Avenue, New York, New York.

11. Defendant MDG is a corporation organized and existing under the laws of Canada. Its principal place of business is located at 189 Forest Hill Road, Toronto, Canada.

12. This Court has diversity jurisdiction over this action pursuant to 28 U.S.C. 1332. There is complete diversity of citizenship between Carlton and the Defendant and this action is for damages in excess of the equivalent of $75,000.

13. Jurisdiction in New York is proper because Defendants have irrevocably consented, pursuant to Section 9(B) of the Exclusive Agreement, to the exclusive jurisdiction of the State and Federal Courts located in the State of New York.

14. Venue is proper in New York County pursuant to 28 U.S.C. 1391(a) because Carlton resides in this judicial district. Venue is also proper pursuant to Section 9(B) of the Exclusive Agreement, which states that the parties "waive any other venue to which each party might be entitled by domicile or otherwise."

## Factual Background

15. Carlton is one of the premier debt and equity capital markets advisers for commercial real estate in the United States. Under the leadership of its principal, Howard L.

Michaels, Carlton has successfully completed over CAD $100 billion in debt and equity transactions.

16. On January 19, 2016, Carlton and Defendant entered into the Exclusive Agreement.

17. Pursuant to the Exclusive Agreement, Defendant MDG retained Carlton, as Defendant's sole and exclusive broker and agent, for the purpose of "**raising debt and equity capital for construction and future development financing of the property identified and commonly known as One Bloor West at Yonge and Bloor Street, Toronto, Canada for the development of a project consisting of (x) an approximate 140,000 square foot eight (8) story retail complex with underground… parking for approximately 400 parking spaces ("Phase 1"), and (y) approximately 694 residential condominium units ("Phase 2"…), as further described on <u>Schedule "A"</u> annexed hereto (collectively, the "Property").** *See,* Exclusive Agreement, Preamble (emphasis in original).

18. Defendant MDG is the owner of the Property.

19. Pursuant to Section 1 of the Exclusive Agreement, Defendant appointed "Carlton as its *sole* and *exclusive* broker and agent with the *exclusive* right to negotiate and obtain for the Property construction and future development financing of the Property, one or more mortgage loan… preferred equity and/or joint venture equity term sheets, letters of intent, applications, indications of interest or other financing arrangements (individually or in the aggregate, a '**Commitment**'), issued by one or more mortgage lender(s) (each a "**Lender**"), mezzanine or subordinate lender(s), equity investor(s) and/or joint venture investment partner(s) (each of the foregoing, an '**EJV Party**')…". (Bold in original).

20. The "Term" of the Agreement commenced on January 19, 2016 "and continue[d] for a period of 120 days from the date the financing and investment memorandum. . . is approved by Client (the '**Term**'). *See*, Agreement Section 2(A) (emphasis in original).

21. Defendant approved Carlton's financing and investment memorandum on February 22, 2016. As such, the Term of the Exclusive Agreement began on January 19, and expired on June 21, 2016. A copy of Defendant's President's (Sam Mizrahi) February 22, 2016 e-mail approving Carlton's financing and investment memorandum is annexed hereto as **Exhibit B**.

22. Section 2(B) of the Exclusive Agreement required Defendant, during the Term, to "refer to Carlton all inquiries and offerings received by [Defendant] with respect to a possible debt and/or equity financing of the Property by any and all Lenders, EJV Parties, or their affiliates, correspondents or other representatives, regardless of the source of such inquiries or offerings."

23. In addition, under Section 2(B), [a]ll negotiations shall be conducted by Carlton or under Carlton's direction, subject to [Defendant's] final review and approval."

24. Nevertheless, while Carlton diligently met or exceeded all of its obligations under the Exclusive Agreement, Defendant breached Section 2(B) when, during the Term, Defendant intentionally concealed that Defendant was negotiating with CERIECO concerning a potential investment in the Property.

25. Carlton discovered this breach by Defendant after the Term ended, when Carlton read a May 9, 2016 "**Tweet**" (a posting made on the social media website Twitter) --- which Tweet was sent during the Term of the Exclusive Agreement --- from John Tory, the Mayor of Toronto, that CERIECO and MDG were "partnering" on "The One Tower at Yonge & Bloor" (i.e., the Property). A copy of this Tweet, which contains a picture of Mayor Tory, Sam Mizrahi of Defendant, and members of CERIECO, is annexed hereto as **Exhibit C**.

26. The Tweet confirms that Defendant was negotiating with CERIECO (and meeting with public officials) - without Carlton's presence or knowledge - during the Term of the Exclusive Agreement.

27. While the Exclusive Agreement contained limited "carve-outs" and exclusions requested by Defendant so that Carlton would not earn a commission from certain limited lenders and equity sources designated by Defendant (i.e., "Excluded Lenders" and "EJV Parties" such as AIG, Fortress and existing lenders Fiera and CREIT), Defendant never sought an exclusion for CERIECO, and it was not excluded or carved-out from Carlton's exclusive agency.

28. CERIECO therefore was unquestionably, during the Term, included in the Carlton exclusive, and in fact was a party that expressed interest to Defendant in investing debt and/or equity in the Property.

29. Defendant's failure and refusal to refer, CERIECO, as an interested party, to Carlton was a breach of the parties' Exclusive Agreement.

30. CERIECO's expressed interest in investing equity capital in the Property, which, as evidenced by the Tweet, unquestionably began during the Term, was finalized pursuant to an August 24, 2017 Debenture between CERIECO and Defendant (the "**Debenture**"), wherein CERIECO agreed to fund a CAD $213,000,000 capital investment in the Property (the "**CERIECO Equity Investment**").

31. The CAD $213,000,000 CERIECO Equity Investment closed on or about August 24, 2017 with Defendant receiving those funds.

32. Additionally, Section 3(D) of the Exclusive Agreement states in relevant part that Carlton shall be entitled to a Commission, upon the initial closing of such transaction, for a period of three years after expiration of the Term (i.e., the 3 Year Tail Period) from any and all

investments by any and all "EJV Parties… [that] showed an express interest in pursuing a financing arrangement, whether through discussions, meetings or other forms of communication."

33. Clearly, the Tweet demonstrates that CERIECO showed an express interest during the Term and pursuant to the Exclusive Agreement Carlton is entitled to a Commission.

34. Thus, under Section 3(B) of the Exclusive Agreement, a Commitment --- defined broadly in Section 1 to include, "indications of interest", "applications", "letters of intent" or "term sheets" --- originated during the Term, and/or, pursuant to Section 3(D), a Commitment was entered into with CERIECO within the 3 Year Tail Period, thereby entitling Carlton to its Commission.

35. As a result, pursuant to Section 3(B) of the Exclusive Agreement, Carlton became entitled to "a commission in an amount equal to Four Percent (4.0%)… upon the initial closing of such transaction (an '**Equity Closing**')" (emphasis in original), even though such closing took place after the Term ended.

36. Separately and as confirmed by the Tweet, because Defendant breached its referral obligation (Section 2(B)) during the Term of the Exclusive Agreement by failing and refusing to disclose CERIECO to Carlton, thereby breaching the Exclusive Agreement by frustrating Carlton's ability to negotiate and finalize a Commitment with CERIECO. As such, Carlton was damaged by such breach in the amount of CAD $8,520,000

37. Within a month following the Tweet, Defendant pretextually purported to terminate the Exclusive Agreement by notice dated June 8, 2016. The Exclusive Agreement contained no provision which entitled Defendant to terminate Carlton's Exclusive during the Term; in any event, the reasons cited in that ineffective termination notice, having been sent just 13 days prior to the

expiration date of the Term, were entirely pretextual because Defendant was trying to avoid paying Carlton for CERIECIO's pending investment.

38.     Carlton promptly responded by rejecting Defendant's purported termination.

39.     As a result, Carlton's 4% Commission under the Exclusive Agreement in the amount of CAD $8,520,000 became due and payable to Carlton on August 24, 2017, the date of the closing.

40.     Carlton, having duly and fully performed all of Carlton's obligations under the Exclusive Agreement, sent Defendant an invoice for Carlton's CAD $8,520,000 Commission on October 5, 2017.

41.     Despite due demand, Defendant has refused to pay any Carlton's CAD $8,520,000 Commission, or any portion thereof.

42.     Pursuant to Section 8 of the Exclusive Agreement, "[i]f either party commences litigation against the other party to enforce the terms of this Agreement, the prevailing party shall be entitled to recover from the other party the costs and expenses (including, without limitation, reasonable attorneys' fees) incurred in such litigation."

## AS AND FOR A FIRST CAUSE OF ACTION
### (Breach of Contract)

43.     Carlton repeats and realleges each and every allegation contained in paragraphs 1 through 42 hereof, inclusive, as if fully set forth herein.

44.     The parties entered into the Exclusive Agreement whereby Defendant retained Carlton to act as Defendant's "sole and exclusive broker and agent with the exclusive right to negotiate and obtain for [Defendant] one or more… financing arrangements… for the Property."

45.     Section 2(B) of the Exclusive Agreement requires Defendant to immediately refer to Carlton all inquiries and offerings of any possible debt and/or equity financings for the Property.

46. During the Term of the Exclusive Agreement, CERIECO, as evidenced by the Tweet, expressed an interest to Defendant in investing debt and/or equity in the Property.

47. While the purported termination letter of June 8, 2016 was pretextual and ineffective, the Tweet of May 9, 2016, in any event, shows that CERIECO had expressed interest in investing in the Property during the Term, which should have been disclosed by Defendant and put on the "List".

48. Defendant failed and refused to refer CERIECO's inquiry and offer to Carlton, Defendant's sole and exclusive debt and equity broker and agent.

49. Defendant's failure and refusal to refer CERIECO to Carlton was a breach of Section 2(B) of the parties' Exclusive Agreement.

50. As is made clear respectively in Sections 3(B) and 3(D), if a Commitment (e.g., an indication of interest) eventuates and/or an EJV Party shows an "express interest" during the Term, then Carlton is entitled to a Commission upon the initial closing of that transaction, even if it takes place after the end of the Term.

51. CEREICO either showed an express interest or issued an indication of interest in investing in the Property, or both, during the Term.

52. Regardless, as stated above, Defendant independently breached the Exclusive Agreement by failing and refusing to refer the inquiry by CERIECO, thereby frustrating Carlton's ability to negotiate and finalize a Commitment with CERIECO --- an "interested party" --- during the Term.

53. CERIECO's express interest in investing equity capital providing equity in the Property, which, as evidenced by the Tweet, unquestionably began during the Term, was finalized

pursuant to the August 24, 2017 Debenture, wherein CERIECO agreed to fund the CAD $213,000,000 CERIECO Equity Investment.

54. The CAD $213,000,000 CERIECO Equity Investment closed on or about August 24, 2017.

55. Pursuant to Section 3(B) of the Exclusive Agreement, Carlton was therefore entitled to a commission in an amount equal to Four Percent (4.0%) upon the initial closing of the CAD $213,000,000 CERIECO Equity Investment.

56. Separately, as confirmed by the Tweet, Defendant breached its referral obligation (Section 2(B) thereof) during the Term of the Exclusive Agreement; and as a result, Carlton was damaged by such breach in the amount of CAD $8,520,000.

57. Carlton duly performed all terms and conditions of its Exclusive Agreement with Defendant and sent Defendant an invoice for its CAD $8,520,000 Commission.

58. There were no other conditions to the payment to Carlton of its CAD $8,520,000 Commission.

59. Despite due demand therefor, Defendant has refused to pay Carlton's CAD $8,520,000 Commission, or any portion thereof.

60. As a result, Defendant has breached its Exclusive Agreement with Carlton.

61. Accordingly, Carlton is entitled to a judgment against Defendant, in the amount of CAD $8,520,000, together with statutory interest, and attorneys' fees, costs and disbursements in accordance with Section 8 of the Exclusive Agreement.

**WHEREFORE**, Plaintiff, The Carlton Group, Ltd._,_ demands judgment as follows:

a) On the First Cause of Action against defendant Mizrahi Development Group (The One) Inc., in the amount of CAD $8,520,000, together with statutory interest, attorneys' fees, costs and disbursements in accordance with Section 8 of the Exclusive Agreement; and

b) Such other relief as the Court deems just and equitable

Dated: New York, New York
       November 16, 2017

                                             MEISTER SEELIG & FEIN LLP

                                             By: _____
                                                   Stephen B. Meister, Esq.
                                                   David E. Ross, Esq.
                                        125 Park Avenue, 7th Floor
                                        New York, New York 10017
                                        (212) 655-3500

## VERIFICATION

STATE OF NEW YORK    )
                     )   ss.:
COUNTY OF NEW YORK )

HOWARD L. MICHAELS, being duly sworn, deposes and says:

I am the Chairman and Chief Executive Officer of Plaintiff, The Carlton Group, Ltd., and am authorized to act on its behalf. I have read the foregoing Verified Complaint and know its contents thereof and the same is true to my knowledge, except as to matters alleged on information and belief, and as to those matters, I believe them to be true.

_____
HOWARD L. MICHAELS

Sworn to before me this
16TH day of November 2017

_____
Notary Public

PAUL WOLFSON
Notary Public, State of New York
No. 01WO5024198
Qualified in Westchester County
Commission Expires March 7, 2018